IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


DAVID DANIELS                                                              PLAINTIFF

                    v.                         Civil No. 06-5205

SHERIFF KEITH FERGUSON;
CAPTAIN PETRAY; LT. CARTER;
SGT. FAULKENBURY; SGT. NANCE;
and SGT. TOMLIN                                                           DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

David Daniels brings this pro se civil rights action pursuant to 42 U.S.C. § 1983.  While

he was incarcerated at the Benton County Detention Center, Daniels contends his federal

constitutional rights were violated in the following ways:  (1) he was repeatedly put on lock-

down for things that never happened; and (2) as a result he was housed in administration

segregation for extended periods of time.

Defendants filed a motion for summary judgment (Doc. 43).  To assist plaintiff in

responding to the motion, the undersigned entered an order (Doc. 52) directing the plaintiff to

complete, sign and return an attached questionnaire that would serve as his response to the

motion for summary judgment.  Plaintiff filed a timely response to the court's questionnaire

(Doc. 54).   The case is currently before the undersigned for the issuance of a report and

recommendation on the motion for summary judgment.

## I. BACKGROUND

Daniels was booked into the Benton County Detention Center (BCDC) on charges of rape

and sexual assault on December 28, 2005.  *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1.  He

-1-

was to be held for a bond hearing. *Id.* He remained incarcerated there until transferred to the Arkansas Department of Correction on April 17, 2007. *Id.* at ¶ 31.

The jail policy with respect to inmate visits states that inmates are encouraged to maintain relationships with family and friends and that visiting is scheduled on a regular basis, limited by the physical and personnel constraints of the jail. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 2 at page 1. The jail policy regarding discipline provides the procedures to be used for disciplinary actions and the limitations to the disciplinary actions. *Id.* at pages 4-11.

The policy regarding inmate hygiene states that inmates confined to a housing unit are provided availability to showers on a daily basis with the exception of inmates on lock-down status. *Defts' Ex.* 2 at page 12. Inmates on lock-down status are allowed to shower at least every three days. *Id.* Daniels, however, states he was denied showers and would not get one for "weeks at a time." *Resp.* at ¶ 4 & ¶ 5. He maintains the "daily basis" did not apply to him. *Id.*

The BCDC policy provides that inmate telephone calls are collect with the exception of numbers approved by the Benton County Jail Administration. *Resp.* at ¶ 6. On December 28th Daniels signed an inmate telephone system notice which stated that the BCDC allowed inmates to make calls as a privilege only and that all calls are collect with the exception of bail bond companies and other numbers previously approved by the Sheriff. *Defts' Ex.* 3.

The call detail report for Daniels from December 28, 2005, until January 5, 2007, shows he had continued access to a telephone during his incarceration. *Defts' Ex.* 4. Daniels maintains the report he received stops at April. *Resp.* at ¶ 8. Further, he states many of the calls are done on the same day. *Id.* For instance, he states there were ten calls in one day and several calls

-2-

made from December 28, 2005, to April of 2007 when he had other inmates call for him using his pin number because he was on lock-down. *Id.*

The activity report indicates Daniels participated in multiple activities during his incarceration at the BCDC. *Defts' Ex.* 5. Daniels states he did not have this exhibit in front of him when he responded to the summary judgment motion. *Id.* He states "the lady at the Diagnostic Unit [of the Arkansas Department of Correction] made me send most of my legal work to a friends house." *Resp.* at ¶ 9(A).

Daniels denies he was provided with opportunities to exercise outside his cell on a regular basis. *Resp.* at ¶ 9(B). He states he could not perform basic exercises such as sit-ups and running in place in his cell because of three herniated discs. *Id.* at ¶ 9(C). Daniels also contends each time someone attempted to visit him they were sent away and told he was on lock-down. *Id.* at ¶ 9(D).

Daniels was put on lock-down on January 10, 2006. *Resp.* at ¶ 10. He contends he was placed on lock-down because he was hurt from falling down the stairs. *Id.* at ¶ 11. He indicates he was housed in cell 143 which was the public restroom for all inmates in D149. *Id.* Daniels indicates the inmates would hide their extra stuff under the bunk. *Id.* Daniels indicates he was written up. *Id.* He maintains he never saw the disciplinary. *Id.* He asserts he was actually placed on lock-down so he wouldn't be seen hopping around hurt and so he could not use the phone to call for help. *Id.* Daniels states he was on lock-down until he left in April of 2007. *Id.*

According to defendants' records, on February 22, 2006, Daniels was given a disciplinary for concealing items from the jail staff. *Defts' Ex.* 6 at page 1. Defendants indicate Daniels was

-3-

provided with written notice of the violation and a hearing was held.  *Id.*  Daniels maintains this was all made up and he did not receive notice or a hearing.   *Resp.* at ¶ 12 & ¶ 13(A).  He maintains he was always found guilty without even being there.  *Id.* at ¶ 13(B).

On February 27th Daniels was given a disciplinary for unauthorized correspondence. *Resp.* at ¶ 14(A).  He was provided written notice of the disciplinary violation and a hearing was held.  *Defts' Ex.* 6 at page 1.  He was found guilty of the violation.  *Resp.* at ¶ 14(C).  He appealed the decision and the decision was affirmed.  *Id.*

According to defendants, on March 15th Daniels was given a disciplinary for refusing the order of a deputy.  *Defts' Ex.* 6 at page 3.  Defendants indicate Daniels was provided with written notice of the violation and a hearing was held.  *Id.*  Daniels was found guilty and given ten days lock-down and loss of privileges.  *Id.*  Daniels maintains this was all made up and he did not receive notice or a hearing.   *Resp.* at ¶ 15(A) & ¶ 15(B).  He maintains he was always thirty days lock-down.  *Id.* at ¶ 15(C).

According to defendants, on March 22nd Daniels was given a disciplinary for exiting the cell without wearing his uniform in the correct manner.  *Defts' Ex.* 6 at page 4.  Daniels states he was given a disciplinary for having his t-shirt out but that this occurred because the officers had an inmate hit him in the face with a mattress causing his shirt to come untucked.  *Resp.* at ¶ 16(A).  Defendants indicate he received five days lock-down.  *Defts' Ex.* 6 at page 4.  Daniels maintains he received thirty days lock-down.  *Resp.* at ¶ 16(A) & ¶ 16(C).

-4-

On May 14th Daniels was given a disciplinary for fighting. *Defts' Ex.* 6 at page 5. Daniels states there was no fight and Sgt. Nance changed the disciplinary to fighting. *Resp.* at ¶ 17(A). Daniels was given a written notice of the disciplinary violation and a hearing was held. *Id.* at ¶ 17(B). He was found guilty and given thirty days lock-down and loss of privileges. *Id.* at ¶ 17(C).

On May 16th Daniels was given a disciplinary for concealing items from jail staff. *Defts' Ex.* at page 6. Daniels maintains defendants made this disciplinary up. *Resp.* at ¶ 18(A). Defendants maintain Daniels was found guilty and given ten days lock-down. *Defts' Ex.* 6 at page 6. Daniels asserts thirty days were given to him if "anything else." *Resp.* at ¶ 18(C).

According to defendants' records, on May 16th Daniels was also given a disciplinary for placing items on the cells walls and disobeying the order of a deputy. *Defts' Ex.* 6 at pages 7-8. Daniels maintains this never happened and he never received any paperwork. *Resp.* at ¶ 19(B) & ¶ 20(A). He was found guilty of placing items on the cell wall and the lock-down was to run concurrently with the lock-down he received on the disciplinary for concealing items from jail staff. *Id.* at ¶ 19(A). He received thirty days lock-down on the disciplinary charge for disobeying the order of a deputy. *Id.* at ¶ 20(C).

According to defendants' records, on May 17th Daniels was given a disciplinary for stealing or being in possession of stolen property. *Defts' Ex.* 6 at page 9. Daniels asserts he did not steal anything. *Resp.* at ¶ 21(A). He denies he was given written notice of the disciplinary violation or that a hearing was held. *Id.* at ¶ 21(B). He was found guilty and given thirty days lock-down and loss of privileges. *Id.* at ¶ 21(C).

-5-

According to defendants' records, on May 20th Daniels was given a disciplinary for possession of unauthorized objects. *Defts' Ex.* 6 at page 10. Daniels contends this never happened. *Resp.* at ¶ 22(A). Daniels denies he was given written notice of the disciplinary violations or a hearing. *Id.* at ¶ 22(B). He states he was given thirty days lock-down. *Id.* at ¶ 22(C).

On June 6th Daniels was given a disciplinary for storing food. *Resp.* at ¶ 23(A). He denies he was given written notice of the disciplinary violation or a hearing. *Id.* at ¶ 23(B). He was found guilty and given five days lock-down and loss of privileges. *Defts' Ex.* 6 at page 11. However, Daniels contends the five days turned into months. *Resp.* at ¶ 23(C). He appealed and the decision was affirmed. *Id.* at ¶ 23(D). According to Daniels, Lt. Carter is prejudice and told him if one of his officers is wrong, they are right in his eyes, so everything is always affirmed. *Id.*

According to defendants' records, on June 18th Daniels was given a disciplinary for concealing items from the jail staff. *Defts' Ex.* 6 at page 12. Daniels maintains this never happened. *Resp.* at ¶ 24(A). Defendants maintains Daniels was given written notice of the disciplinary violation and a hearing was held. *Defts' Ex.* 6 at page 12. Daniels contends he received nothing. *Resp.* at ¶ 24(B). Defendants indicate Daniels was found guilty and given ten days lock-down. *Defts' Ex.* 6 at page 12. Daniels indicates he was found guilty but given thirty days lock-down. *Resp.* at ¶ 24(C). Daniels appealed and the decision was affirmed. *Id.* at ¶ 24(D).

AO72A
(Rev. 8/82)

According to defendants' records, on July 10th Daniels was given a disciplinary for concealing items from the jail staff. *Defts' Ex.* 6 at page 13. Daniels maintains this never happened. *Resp.* at ¶ 25(A). Defendants maintains Daniels was given written notice of the disciplinary violation and a hearing was held. *Defts' Ex.* 6 at page 13. Daniels contends he received nothing. *Resp.* at ¶ 25(B). Defendants indicate Daniels was found guilty and given ten days lock-down. *Defts' Ex.* 6 at page 13. Daniels indicates he was found guilty but given thirty days lock-down. *Resp.* at ¶ 25(C). Daniels appealed and the decision was affirmed. *Id.* at ¶ 25(D).

According to defendants' records, on July 10th Daniels was also given a disciplinary for refusing to obey the order of a deputy. *Defts' Ex.* 6 at page 14. Daniels maintains this never happened. *Resp.* at ¶ 26(A). Defendants maintains Daniels was given written notice of the disciplinary violation and a hearing was held. *Defts' Ex.* 6 at page 14. Daniels contends he received nothing. *Resp.* at ¶ 26(B). Defendants indicate Daniels was found guilty and given ten days lock-down. *Defts' Ex.* 6 at page 14. Daniels indicates he was found guilty but given thirty days lock-down. *Resp.* at ¶ 26(C). Daniels appealed and the decision was affirmed. *Id.* at ¶ 26(D).

According to defendants' records, on September 6th Daniels was given a disciplinary for possession of contraband. *Defts' Ex.* 6 at page 15. Daniels maintains this never happened. *Resp.* at ¶ 27(A). Defendants maintains Daniels was given written notice of the disciplinary violation and a hearing was held. *Defts' Ex.* 6 at page 15. Daniels contends he received nothing. *Resp.* at ¶ 27(B). Defendants indicate Daniels was found guilty and given thirty days lock-down.

AO72A
(Rev. 8/82)

*Defts' Ex.* 6 at page 15.  Daniels appealed and the decision was affirmed.  *Id.* at ¶ 27(D).

According to defendants' records, on September 6th Daniels was given a second disciplinary for possession of contraband.  *Defts' Ex.* 6 at page 16.  Daniels maintains this never happened.  *Resp.* at ¶ 28(A).  Defendants maintain Daniels was given written notice of the disciplinary violation and a hearing was held.  *Defts' Ex.* 6 at page 16.  Daniels contends he received nothing.  *Resp.* at ¶ 28(B).  Defendants indicate Daniels was found guilty and given thirty days lock-down.  *Defts' Ex.* 6 at page 16.  Daniels appealed and the decision was reversed.  *Id.*

According to defendants' records, on September 6th Daniels was also given a disciplinary for stealing.  *Defts' Ex.* 6 at page 18.  Daniels maintains this never happened.  *Resp.* at ¶ 29(A).  Defendants maintains Daniels was given written notice of the disciplinary violation and a hearing was held.  *Defts' Ex.* 6 at page 18.  Daniels contends he received nothing.  *Resp.* at ¶ 29(B).  Daniels was found guilty and given thirty days lock-down.  *Id.* at ¶ 29(C).  Daniels appealed and the decision was reversed.  *Defts' Ex.* 6 at page 18.

According to defendants' records, on September 27th Daniels was given a disciplinary for placing items on fixtures not meant for that purpose.  *Defts' Ex.* 6 at page 17.  Daniels maintains this never happened.  *Resp.* at ¶ 30(A).  Defendants maintains Daniels was given written notice of the disciplinary violation and a hearing was held.  *Defts' Ex.* 6 at page 17.  Daniels contends he received nothing.  *Resp.* at ¶ 30(B).  Defendants indicate Daniels was found guilty and given five days lock-down.  *Defts' Ex.* 6 at page 17.  Daniels indicates he received

-8-

thirty days lock-down. *Resp.* at ¶ 30(C).  Daniels appealed and the decision was affirmed. *Id.* at ¶ 27(D).

Daniels denies he was ever given written notice of any of the disciplinary violations. *Resp.* at ¶ 33.  Half of the time he states he was just given a disciplinary without a hearing.  *Id.* He indicates he was found guilty all the time.  *Id.*  With respect to an appeal, he asserts they would just write on the paper that he did not want to appeal or just say they gave him an appeal to make it look good.  *Id.*  He maintains the defendants did what they wanted.  *Id.*  He asserts Sgt. Nance was the worse one because she hates rapists and blacks.  *Id.*

Daniels maintains he was going crazy being on lock-down twenty-four hours a day. *Resp.* at ¶ 34(A).  He maintains defendants:  would not allow him to shower; got inmates to call him nigger and take his food; would come in make him strip down and take his clothes and give him dirty ones; put him in a cold cell with no mattress or blanket; and abused him and then would not give him medical care for his injuries or for his medical conditions.  *Id.*

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth

specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  DISCUSSION

Defendants have now moved for summary judgment.  First, defendants argue they are sued in their official capacities only.  As there is no evidence of any custom or policy of Benton County that was a moving force behind any alleged violation of plaintiff's constitutional rights, they contend there is no basis on which they can be held liable under § 1983.  Second, defendants maintain Daniels was afforded Due Process.  Finally, defendants argue Daniels loss of privileges and the conditions while on lock-down were not unconstitutional.

#### A.  *Official Capacity v. Individual Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants acted under color of state law and that they violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham*

-10-

*v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere

negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.

*Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*,

474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official

capacity, or claims may be stated against a defendant in both his individual and his official

capacities.  In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the

distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those
> in their official capacities as to the type of conduct that is actionable and as to the
> type of defense that is available.  *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358,
> 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities
> are equivalent to claims against the entity for which they work; they require proof
> that a policy or custom of the entity violated the plaintiff's rights, and the only
> type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at
> 24-27, 112 S. Ct. at 361-62 (1991).  Personal capacity claims, on the other hand,
> are those which allege personal liability for individual actions by officials in the
> course of their duties; these claims do not require proof of any policy and
> qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25-27, 112 S. Ct.
> at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has advised plaintiffs to specifically plead whether government agents

are being sued in their official or individual capacities to ensure prompt notice of potential

personal liability.  *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).  *See also Andrus v.

Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual

capacity is required to put public officials on notice they will be exposed to personal liability).

When the plaintiff fails to state whether he is suing an official in his individual capacity, the

-11-

Eighth Circuit has construed the claim to be against the official in his official capacity only.  *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities.  Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

At the same time, we are charged with liberally construing pro se complaints.  *See e.g. Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)(requirement that pro se complaints be construed even more liberally than counseled pleadings); *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief").  In responding to the summary judgment motion, Daniels has noted that he intended to sue the defendants in both their individual and official capacities. *Resp.* at ¶ 32.  As plaintiff is proceeding pro se and is incarcerated, we will construe his complaint to be asserting both individual and official capacity claims against the defendants. *See e.g., Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997)(complaint against state officials who were sued in their official capacities was deemed amended to assert personal capacity claims, where plaintiff moved to amend complaint in response to motion for summary judgment).

-12-

### B. Disciplinary Lock-Down

It is not clear from the record before the court when Daniels' status changed from that of

a pretrial detainee to that of a convicted inmate.  For purposes of this motion, we will apply the

standard applicable to pretrial detainees.  Under the Due Process Clause of the United States

Constitution, a pretrial detainee may not be punished prior to an adjudication of guilt.  *See Bell*

*v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).  "We [therefore] begin

with the fundamental principle that a person held in confinement as a pretrial detainee may not

be subjected to any form of punishment for the crime for which he is charged."  *Rapier v. Harris*,

172 F.3d 999, 1002 (7th Cir. 1999).  *See also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir.

1992)("Pretrial detainees are presumed innocent and may not be punished.").  "However, not

every disability imposed during pretrial detention amounts to 'punishment' in the constitutional

sense."  *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending

trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."

*Bell*, 441 U.S. at 537.  In determining whether a particular restriction constitutes a permissible

restriction or amounts to impermissible punishment, the court first asks "whether the restriction

is based upon an express intent to inflict punishment."  *Valdez v. Rosenbaum*, 302 F.3d 1039,

1045 (9th Cir. 2002)(citations omitted).  If "there is no indication of such an express intent," the

court next considers "whether punitive intent can be inferred from the nature of the restriction."

*Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction

of pretrial detention is reasonably related to a legitimate governmental objective, it does not,

-13-

without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.  "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

In *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit stated:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less.  But no process is required if he is placed in segregation not as punishment but for managerial reasons.  Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision.  Or suppose, . . . that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk.  Again, no hearing would be required.  Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities.  As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing.  . . .  In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

*Id.,* 286 F.3d at 438.  *See Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment. . . . Regardless of whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lock-up area if he does not work, the detention amounts to punishment.").

While Daniels denies he was given written notice of the disciplinary violations, all but one violation form contains a summary of a statement he made in response to the charge.  *See Defts' Ex.* 6.  Thus, he was at least given notice of the disciplinary charge whether verbally or in writing.  Two of the convictions were reversed on appeal.  *Defts' Ex.* 6 at pages 16 & 18.

-14-

We conclude defendants are entitled to summary judgment on Daniels' claim regarding his placement in lock-down for disciplinary reasons.  Prior to each lock-down, Daniels was given a hearing, found guilty, and a punishment determined.  Although, Daniels does not agree with the decision of the hearing deputy, this fact does not violate Due Process.

To the extent, Daniels contends his Due Process rights were violated because the disciplinary charges were fabricated or the events simply never occurred, courts have held that a prisoner enjoys no constitutional guarantee to be free from false charges that may lead to punishment. *See e.g., Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986); *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983).  Thus, even if the defendants did file false disciplinary charges against him, no claim of constitutional dimension is stated.

### C.  Loss of Privileges, Abuse, and Conditions while on Lock-down

By virtue of his lock-down status Daniels contends he was not allowed to have visitation, his use of the phone was restricted, his shower privileges were reduced and his mental health was adversely impacted.  He also maintains defendants:  got inmates to call him nigger and take his food; would come in make him strip down and take his clothes and give him dirty ones; put him in a cold cell with no mattress or blanket; and abused him and then would not give him medical care for his injuries or for his medical conditions.  *Resp.* at ¶ 34(A).

### (1).  Visitation

Prisoners retain their constitutional rights to the extent those rights do not conflict with their status as prisoners and the legitimate demands of the prison system.  *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974).  Among the rights guaranteed by the Constitution is the First Amendment's guarantee of the right to freedom of association.

-15-

In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989), the Supreme Court held that prisoners do not possess a substantive liberty interest arising under the Constitution in unfettered visitation. *See also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)("A prisoner does not have a liberty interest in contact visitation). More recently in *Overton v. Bazzetta*, 539 U.S. 1043, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003), the Supreme Court noted that "freedom of association is among the rights least compatible with incarceration." *Id.* at 2167.   It held that "[s]ome curtailment of that freedom must be expected in the prison context." *Id.*  The Court, however, cautioned that it was not holding or implying that "any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.*

At issue in *Bazzetta* were regulations of the Michigan Department of Corrections that placed certain limitations on visits from family members, that prohibited inmates from visiting with former inmates, and that subjected inmates with two substance-abuse violations to a ban of at least two years on future visitation.  The Court held these limitations were rationally related to legitimate penological objectives and did not violate substantive due process, or the free association guarantee of the First Amendment.  The Court further held that the two year ban on visitation for inmates with two substance-abuse violations did not violate the Constitutional prohibition against cruel and unusual punishment. *See also Ware v. Morrison*, 276 F.3d 385, 387-388 (8th Cir. 2002)(Inmate "had no constitutionally protected interest implicated by the suspension of his visitation privileges."); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (prison officials can reasonably limit prisoner's right to communicate with people outside prison when necessary to maintain security); *Smith v. McDonald,* 869 F. Supp. 918 (D. Kan. 1994)

-16-

(finding no violation of prisoner's rights by denying visitation for five months with six-year-old son during seven month period of incarceration).

In this case, when Daniels was not on lock-down he could have visitors. While on lock-down, detainees face the loss of privileges including visitation. *Defts' Ex.* 2 at page 6. The limited suspension of privileges during a disciplinary lock-down does not implicate Daniels' constitutional rights.

### *(2). Telephone Use*

There is no per se constitutional right to use the telephone for personal calls. *See e.g., United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000). There is no right to unlimited phone use and restrictions may be placed on an inmate's right to use the telephone. *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989). In this case, Daniels was permitted to use the phone to call his attorney or his bondsman. Additionally, as the phone log shows, either Daniels or someone on his behalf, used the telephone on a multiple occasions throughout his incarceration. *Defts' Ex.* 4.

### *(3). Mental or Verbal Abuse*

Daniels' claims based on the alleged mental or verbal abuse of defendants and various other guards fails as a matter of law. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, threats, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional

-17-

violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension);  *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim).  *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

### *(4).  General Conditions of Confinement while on Lock-down*

The Court of Appeals for the Eighth Circuit has adopted the same legal standard for detainees that applies to convicted inmates.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006)(adopting the Eighth Amendment's deliberate indifference standard as the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions

-18-

that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).

Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The policy at the BCDC called for inmates on lock-down to have access to showers once every three days. *Defts' Ex.* 2. While Daniels denies he had access to showers this frequently and states he did not receive showers on a daily basis and sometimes did not get one for "weeks on end" he did not explain further. *Resp.* at ¶ 5. He does not allege he had no access to basic hygiene items such as soap and water between showers. *See e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)("a two week suspension of shower privileges does not suffice as a denial of 'basic hygiene needs'").

-19-

Daniels asserts most of the time he was on lock-down the officers would not allow him out of his cell for his hour out. *Resp.* at ¶ 9(B). Daniels, however, does not attribute this failure to the named defendants or show that this was the result of a custom or policy of Benton County. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(respondeat superior liability not permissible under § 1983); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). Nor does he attempt to quantify this for the court in anyway. He does not indicate if he went without outside exercise for ten days, twenty days, or thirty days. *See Phillips v.* Norris, 320 F.3d 844, 847 (8th Cir. 2003)(thirty-seven days without being allowed to exercise did not constitute an atypical and significant hardship in the context of normal prison life); *Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001)("short-term denials of exercise may be inevitable in the prison context."); *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986)(fifteen days of no out-of-cell exercise not cruel and unusual punishment); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(45 minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody). Additionally, with respect to his ability to exercise in his cell, he indicates he could not do sit ups or running in place in his cell because of his medical condition. *Resp.* at ¶ 9(C). He does not indicate why he could not do exercises in his cell that were compatible with his medical condition. *Id.*

With respect to his mattress and blanket, Daniels had the mattress and blanket to sleep with it was only taken away during the day. With respect to the alleged denial of medical care, we note plaintiff filed two separate civil rights action asserting a denial of medical care claim naming as defendants facility doctors and nurses. The one lawsuit named Dr. John Huskins and

-20-

Nurse Andrea G. as defendants, Civil No. 07-5078, and was dismissed without prejudice on December 14, 2007, because plaintiff was not eligible for *in forma pauperis* status pursuant to the "three strikes" provision Prison Litigation Reform Act.  The second lawsuit named Dr. Neil Mullins and Nurse Sue McDonald as defendants, Civil No. 06-5121.  Dr. Mullins and Nurse McDonald were granted summary judgment in that case on September 25, 2007.[1]  There is no indication the defendants named in this lawsuit are directly involved in the provision of medical care at the BCDC.  *See e.g., Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence the defendants were medical personnel or were personally involved in making medical decisions about the plaintiff's treatment)

The Supreme Court has stated that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  Daniels has not identified a single, identifiable human need such as food, warmth, or clothing that he has been deprived of.  The court finds no genuine issues of material fact as to whether Daniels was deprived of the minimal civilized measure of life's necessities or incarcerated under conditions posing a substantial risk of serious harm.  *See e.g., Simmons v. Cook*, 154 F.3d 805 (8th Cir. 1998).

### IV.  CONCLUSION

I recommend that the defendants' motion for summary judgment (Doc. 43) be granted and the complaint be dismissed with prejudice.

---

[1]We note Daniels is asserting an excessive force claim in that case against Corporal Reams and Officer Hernandez.  The case is set for evidentiary hearing.

AO72A
(Rev. 8/82)

The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 22nd day of February 2008.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)